Kelley MOISER and Jennifer Moiser *v.*
ARKANSAS DEPARTMENT of HEALTH
& HUMAN SERVICES

CA 05-366 233 S.W.3d 172

Court of Appeals of Arkansas
Opinion delivered March 22, 2006

*Lee Wisdom Harrod*, for appellant

*Gray Allen Turner*, for appellee.

LARRY D. VAUGHT, Judge. Appellant Kelly Moiser[1] argues on appeal that the Cleburne County Circuit Court clearly erred in finding that his son, A.M., was a dependent-neglected child. We agree and reverse.

On October 23, 2004, Kelly was arrested and incarcerated. At the time of his arrest, Kelly was accompanied by A.M. and a friend, Jessica Blankenstaff. Kelly asked Blankenstaff to take A.M. to Antoinette Moiser, Kelly's aunt. Antoinette, in turn, took the child next door to Kelly's father, Louis Moiser, who Kelly and A.M. had been living with prior to the arrest.

On October 27, 2004, the trial court held a Family in Need of Services hearing and found that there was not an appropriate care giver in the home. The court ordered the child into the custody of the Arkansas Department of Human Services (DHS) on a seventy-two-hour hold. On October 29, 2004, the State filed a Petition for Emergency Custody alleging that A.M. was dependent-neglected pursuant to Ark. Code Ann. § 9-27-303(17) (Supp. 2005), specifically asserting that the child was "neglected" as defined in § 9-27-303(36) (Supp. 2005).

On November 4, 2004, the court held a hearing and determined that there was probable cause to continue the emergency order. An adjudication hearing was held on November 11, 2004. The mother of the child, Jennifer Moiser, was not present.

At the time of the hearing, Kelly was incarcerated, and it was uncertain when he would be released. Kelly testified that A.M.'s mother was aware that A.M. had been taken into DHS custody. He stated that she signed custody of A.M. over to him after the divorce. Kelly told the court that he asked Blankenstaff to take A.M. to his aunt and then to his father's house. He acknowledged that he could not take immediate custody of A.M. because of his incarceration. Kelly admitted that at the time of his arrest, his sister, Christine Halton, was also living in his father's home. Christine had since been arrested and incarcerated. Kelly testified that he had served time in prison previously and that his father had taken care of A.M. during that time. Kelly told the court that he wanted A.M. to live with his aunt and uncle, Antoinette and Clifford Moiser.

---

[1] Although legal documents in this case refer to appellant as "Kelley Moiser," the record reflects appellant signed his name "Kelly Moiser."

Antoinette Moiser testified that she was willing to take temporary custody of the child. She stated that neither she nor her husband had ever used drugs or been convicted of a crime. She stated that she lived next door to Louis Moiser and would allow A.M. plenty of visitation with his grandfather.

Louis Moiser testified that he had taken care of A.M. after his son's arrest and before DHS had taken custody of the child. He explained that he worked a shift that started at three in the morning but that he could probably go in around six or seven. He stated that before DHS took custody of A.M., he (Louis) had been working on finding a babysitter for A.M. Louis stated that he would not object to the court putting the child in Antoinette's custody and would actually prefer that. Louis testified that Kelly's sister, Christine, had substance-abuse problems and that he had cared for her three kids.

At the conclusion of the evidence, Kelly made a motion for directed verdict and argued that the State had failed to prove that the allegations in the petition were substantiated by evidence that the child had been neglected. The court denied the motion. Kelly then presented testimony from two witnesses, Nicole Chaberson, a family-service worker from DHS, and Jennie Moiser, Antoinette's daughter. Chaberson told the court that she had investigated Antoinette and performed a home study. Chaberson opined that it would be an appropriate home for A.M. She explained that no information she had gathered about Antoinette or Clifford gave her concerns. She added that she had been to Louis's home and noted nothing that would concern her about it. Jennie testified that she lived with her mother and father and would help out with A.M. She stated that she had never been arrested and felt like her home was appropriate for A.M.

Kelly renewed his motion for directed verdict and argued that A.M. was not neglected pursuant to § 9-27-303(36) and not dependent pursuant to § 9-27-303(17)(B). DHS maintained that a finding of dependency was required so that "whoever has custody of this child, there ought to be an Order giving them custody." The court denied the motion and found the child dependent but not neglected. The court ordered the child into the custody of Antoinette and Clifford Moiser and asked DHS to continue a protective-services case with regard to the child.

In equity matters, such as dependency-neglect cases, the standard of review on appeal is de novo, but we do not reverse the judge's findings unless they are clearly erroneous or clearly against

the preponderance of the evidence. *Wade v. Ark. Dep't of Human Servs.*, 337 Ark. 353, 990 S.W.2d 509 (1999). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* However, a trial court's conclusion on a question of law is given no deference on appeal. *Kelly v. Kelly*, 341 Ark. 596, 19 S.W.3d 1 (2000).

Arkansas Code Annotated § 9-27-325(h)(2)(B) (Supp. 2005) requires proof by a preponderance of the evidence in dependency-neglect situations. Under Ark. Code Ann. § 9-27-313 (Supp. 2005), a child can be taken into immediate custody by the State when that child is in immediate danger. Promptly following that taking, a probable cause hearing must be held and then an adjudication hearing. During the adjudication hearing, the State is required to prove by a preponderance of the evidence that the allegations in the petition for emergency custody were substantiated. Ark. Code Ann. § 9-27-327 (Supp. 2005). Under Ark. Code Ann. § 9-27-303(17)(B) a "dependent juvenile" is a "child whose parent . . . is incarcerated and . . . no appropriate relative or friend [is] willing or able to provide care for the child." The statute goes on to describe a "dependent-neglected juvenile" as one who "is at substantial risk of serious harm as a result of" abandonment, abuse, neglect, or parental unfitness. Ark. Code Ann. § 9-27-303(18). The statute includes "dependent juveniles" as "dependent-neglected juveniles." *Id.* The statute also describes "neglect" as:

> (i) Failure or refusal to prevent the abuse of the juvenile when the person knows or has reasonable cause to know the juvenile is or has been abused;

> (ii) Failure or refusal to provide the necessary food, clothing, shelter, and education required by law . . . .

> (iii) Failure to take reasonable action to protect the juvenile from abandonment, abuse, sexual abuse, sexual exploitation, neglect, or parental unfitness when the existence of this condition was known or should have been known;

> (iv) Failure or irremediable inability to provide for the essential and necessary physical, mental, or emotional needs of the juvenile. . . .

> (v) Failure to provide for the juvenile's care and maintenance, proper or necessary support, or medical, surgical, or other necessary responsibility; or

(vi) Failure, although able, to assume responsibility for the care and custody of the juvenile or to participate in a plan to assume the responsibility; or

(vii) Failure to appropriately supervise the juvenile that results in the juvenile's being left alone at an inappropriate age or in inappropriate circumstances, creating a dangerous situation or a situation that puts the juvenile at risk of harm.

*See* Ark. Code Ann. § 9-27-303(36).

Kelly contends that the trial court erred in not dismissing the petition for emergency custody at the adjudication hearing because the State was unable to substantiate the allegations in the petition as required by Ark. Code Ann. § 9-27-327. He also maintains that even if we find the trial court did not err in not dismissing the petition, it clearly erred in finding that the State had established the child was dependent-neglected under Ark. Code Ann. § 9-27-303(16).

 In this case, the court specifically declined to find the child had been neglected and instead based its decision on a finding of dependency. The court's conclusion that there was no proof presented at the adjudication hearing to substantiate a finding of neglect under § 9-27-303(36) was correct; however, the court clearly erred in adjudicating the child dependent-neglected based on a finding of dependency. Arkansas Code Annotated § 9-27-303(17)(B) clearly states that a child is considered "dependent" when the parent is incarcerated and there is no appropriate relative or friend that is willing and able to care for the child. There was substantial evidence in this case that relatives were willing to take the child — both the grandfather and the aunt and uncle had volunteered. Additionally, there was evidence presented that DHS had reviewed their respective homes and found them appropriate. There was no evidence presented at the adjudication hearing that these family members were inappropriate care givers. Therefore, we hold that it was clear error for the court to find dependency in this situation.

Reversed and dismissed.

HART and ROAF, JJ., agree.