2012 Ark. App. 240

**ARKANSAS DEPARTMENT OF HUMAN SERVICES,**
Appellant

v.

**A.M., Sonja MITCHELL, and Christopher Matthews, Sr., Appellees.**

No. CA 11–739.

Court of Appeals of Arkansas.

April 4, 2012.

DOUG MARTIN, Judge.

The Arkansas Department of Human Services (DHS) appeals from an order of the Jefferson County Circuit Court directing DHS to provide assistance to appellee A.M., a pregnant teenager, in the form of paying for school uniforms and maternity clothing.[1] We reverse and remand for further proceedings.

After the filing of a family-in-need-of-services (FINS) petition on April 14, 2011, by Pine Bluff High School, the Juvenile Office of Jefferson County filed a "notice of intent" with DHS on April 28, 2011, informing DHS that the Juvenile Office intended to recommend that DHS provide services to A.M. and her family. The notice stated that the Juvenile Office believed that DHS's services were necessary "to assist mother with essential basic items to prevent removal" and provided that the Juvenile Office's recommendations would be for "assistance with school uniforms, maternity clothing, and items for [A.M.'s] baby."

DHS filed written objections to the notice of intent on May 2, 2011, noting first that the court lacked jurisdiction to enter any orders regarding a baby that had not been born yet.[2] In addition, DHS argued that, while the circuit court could enter an order to prevent removal of a juvenile from the juvenile's home, the provision of school uniforms, maternity clothing, and baby items were not services that would

Tabitha Baertels McNulty, Office of Chief Counsel, for appellant.

No response from appellee.

---

1. This court substitutes this opinion for one entered January 18, 2012, upon granting the appellant's petition for rehearing. The court has determined that a final order was entered, despite an inadequate certification pursuant to Arkansas Rule of Civil Procedure 54(b), because DHS was not a party below and has followed the procedure for appeal set out in *Arkansas Department of Human Services v. R.P.,* 333 Ark. 516, 970 S.W.2d 225 (1998).

2. *See* Ark.Code Ann. § 9–27–303(32) (Repl. 2006) (defining a "juvenile" as an individual who is from birth to eighteen years of age); *Ark. Dep't of Human Servs. v. Collier,* 351 Ark. 506, 95 S.W.3d 772 (2003) (holding that circuit court exceeded its authority by placing an unborn fetus in DHS custody and requiring DHS to pay for mother's prenatal care).

prevent removal of a juvenile from the family home. DHS noted that A.M. had not been subject to neglect, nor was there any allegation that, by remaining in her residence, there was an immediate danger to the health or physical well-being of the child. Because DHS could discern no reason for removing the child from the home, it asserted that there was no basis for claiming that the provision of maternity clothes and school uniforms would prevent removal.

At a hearing on May 12, 2011, however, the circuit court denied DHS's objection and found that the "items that are to be provided would assist in preventing removal." Referring to the "prior history with the family within the juvenile court system," the court stated that, "if these services are not provided, the court may have to take a hold, and we don't want that to occur. So the court is making a finding that these services are necessary to prevent [3removal." The court entered an order for family services that same day, directing DHS to "provide assistance with school uniforms, maternity clothing, and items for [A.M.'s] baby."

DHS filed a motion to intervene for the limited purpose of contesting the FINS order and a motion to reconsider on May 23, 2011. DHS specifically argued that the court's order did not comply with Arkansas Code Annotated section 9–27–332(a)(2)(B)(ii) (Repl.2009), which requires the court to make written findings outlining how each service DHS is ordered to provide is intended to prevent removal. DHS also pointed out that it would not remove a child from home on the basis that the child did not have maternity clothing or because the child's family could not afford such clothing. Finally, DHS reiterated that the circuit court lacked jurisdiction to enter any orders regarding a baby that had not been born yet.

The circuit court held a hearing on DHS's motion on June 1, 2011. At that hearing, no witnesses testified and no evidence was presented. DHS, however, again said that it did not understand how maternity clothing and school uniforms were services that were designed to prevent the removal of the juvenile from the family home. The court replied that, based on its "extensive Family in Need of Services history and delinquency history with the family," the required items were necessary to prevent educational neglect from occurring and to keep A.M. enrolled in school. DHS replied that "educational neglect" did not fall under the definition of "severe maltreatment" that would warrant removing a juvenile from her home. The court retorted that DHS "should [remove the juvenile] if they're [sic] not going to school." The court also stated that it was "finding that the services are needed to prevent [4maltreatment, and whether or not it's severe, it depends on the trier of fact, and I'm finding that to prevent a situation from happening, and that's what we're ordering these services for."

The circuit court entered an order denying DHS's motion to reconsider on June 7, 2011. Although the court agreed with DHS that the portion of its previous order directing DHS to purchase items for the unborn baby was premature and set aside that portion of the order, the court nonetheless found that, "[b]ased on the history of the case, the court is finding that it is necessary for the Department to purchase [school uniforms and maternity clothing] in order to prevent removal of the juvenile from the family home because the Department would be preventing educational neglect." The court's ruling went on as follows:

The Department has argued that educational neglect is not a reason to remove the juvenile from the family home

because under Arkansas law, a juvenile shall only be removed from the home when there are allegations of severe maltreatment. Educational neglect is a term of art that is used to describe a juvenile not going to school, and the Department has argued today that educational neglect does not fall within the definition of severe maltreatment as contained in Ark.Code Ann. § 12–18–104(17). The court does not agree with this argument and believes that educational neglect is a reason to remove children from the home and that if the Department does not do so when there are such allegations, the court will take that into consideration when finding reasonable efforts.

DHS filed a timely notice of appeal on June 7, 2011.

■ In cases that traditionally sound in equity, such as juvenile proceedings, the standard of review on appeal is de novo, although we do not reverse unless the trial court's findings are clearly erroneous. *Ark. Dep't of Human Servs. v. C.M.*, 100 Ark.App. 414, 269 S.W.3d 387 (2007); *Moiser v. Ark. Dep't of Human Servs.*, 95 Ark.App. 32, 233 S.W.3d 172 (2006). A finding is clearly erroneous when, although there is evidence to support the finding, after reviewing all of the evidence, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Brewer v. Ark. Dep't of Human Servs.*, 71 Ark.App. 364, 43 S.W.3d 196 (2001).

■ DHS first argues that the circuit court's FINS order did not comply with the relevant statute and lacked evidence to support its finding that A.M. was at immediate risk of severe maltreatment and that family services were necessary to prevent A.M.'s removal. We agree. In a family-in-need-of-services case, the petitioner bears the burden of proof by a preponderance of the evidence. Ark.Code Ann. § 9–27–325(h)(2)(B) (Repl.2009). Under the FINS statutes, if a family is found to be in need of services, a circuit court can order family services to rehabilitate the juvenile and his or her family. Ark.Code Ann. § 9–27–332(a)(1)(A). That statute also provides that, "[t]o prevent removal when the Department is the provider for family services, the court *shall make written findings* outlining how each service is intended to prevent removal." Ark.Code Ann. § 9–27–332(a)(2)(B)(ii) (emphasis added).

■ In the present case, the trial court took no evidence and heard no testimony regarding whether any DHS services could prevent removal; rather, it appears to have based its decision on its own personal knowledge of what had happened with A.M.'s family in previous hearings. The court's personal recollection, however, cannot satisfy the petitioner's burden of proof. *See Heaslet v. State*, 77 Ark.App. 333, 343, 74 S.W.3d 242, 248 (2002) ("The personal knowledge of the judge is not judicial knowledge of the court, for there is no way of testing the accuracy of knowledge which rests entirely within the breast of the court.") (quoting *Walker v. Eldridge*, 219 Ark. 594, 595, 243 S.W.2d 638, 639 (1951)); Ark. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by [resort] to sources whose accuracy cannot reasonably be questioned."). Thus, we conclude that the circuit court erroneously based its decision on its personal knowledge instead of evidence and testimony, and the petitioner—here, the Juvenile Office of Jefferson County—did not satisfy its burden of proof.

■ In addition, the circuit court's order must be reversed because it contains

no factual findings. As noted above, "[t]o prevent removal when the Department is the provider for family services, the court *shall make written findings* outlining how each service is intended to prevent removal." Ark.Code Ann. § 9–27–332(a)(2)(B)(ii) (emphasis added). Here, the circuit court's order makes vague conclusions of law about "educational neglect" constituting "severe maltreatment." The order contains no facts about, for example, why A.M. has no school uniforms, why and whether her having school uniforms and maternity clothing would keep her from being suspended or expelled from school, what the consequences would be of her not obtaining the clothing, or whether or not she was even missing school. Rather than making specific findings about these issues, the court instead simply stated that it was "making a finding that these services are necessary to prevent removal." The statute, however, provides that when an order is entered to prevent removal, the court "*shall* make written findings outlining *how* each service is intended to prevent removal." (Emphasis added.) When the General Assembly uses the word "shall," the supreme court has said that this clearly shows that it intended mandatory compliance. *Slusser v. Farm Serv., Inc.*, 359 Ark. 392, 198 S.W.3d 106 (2004); *Loyd v. Knight*, 288 Ark. 474, 706 S.W.2d 393 (1986). The court's failure to do so in this case necessitates reversal.

Finally, we conclude that the court erred in its interpretation of the pertinent statutes. DHS can be ordered to provide services to a FINS family in order to prevent removal of a juvenile from the child's home. *See* Ark.Code Ann. § 9–27–332(a)(1)(B); Ark.Code Ann. § 9–27–303(25)(B)(i) (Repl.2009) ("Family services

are provided in order to ... [p]revent a juvenile from being removed from a parent, guardian, or custodian."). Removal of a juvenile, however, may only happen when there are "clear, reasonable grounds to conclude that the *juvenile is in immediate danger and that removal is necessary to prevent serious harm* from his or her surroundings or from illness or injury and if parents, guardians, or others with authority to act are unavailable or have not taken action necessary to protect the juvenile from the danger and there is not time to petition for and to obtain an order of the court before taking the juvenile into custody." Ark.Code Ann. § 9–27–313(a)(1)(C) (Repl.2009) (emphasis added).

The Child Maltreatment Act, in turn, provides that a child may be taken into custody by DHS if:

(1) The child is subjected to neglect as defined under § 12–18–103(13)(B) [3] and the department assesses the family and determines that the newborn and any other children, including siblings, under the custody or care of the mother are at substantial risk of serious harm such that the children need to be removed from the custody or care of the mother;

(2) The child is dependent as defined in the Arkansas Juvenile Code of 1989, § 9–27–301 *et seq.;* or

(3) Circumstances or conditions of the child are such that continuing in his or her place of residence or in the care and custody of the parent, guardian, custodian, or caretaker presents an *immediate danger to the health or physical wellbeing of the child.*

Ark.Code Ann. § 12–18–1001(a) (Repl.2009) (emphasis added).

We simply cannot agree with the circuit court that the lack of maternity

---

**3.** Section 12–18–103(13)(B) defines neglect as "causing a child to be born with an illegal substance present in the child's bodily fluids ... as a result of the pregnant mother's knowingly using an illegal substance before the birth of the child."

clothes or school uniforms poses an immediate danger to A.M.'s health or physical well-being. The circuit court, nonetheless, found that A.M. would suffer from "educational neglect" if these things were not provided. While it is true that one of the definitions of "neglect" is the "failure or refusal to provide the necessary ... education required by law." Ark.Code Ann. § 9–27–303(36)(A)(ii); Ark.Code Ann. § 12–18–103(13)(A)(ii) (Repl.2009), those statutes provide a specific exception "when the failure or refusal is caused primarily by the financial inability of the person legally responsible and no services for relief have been offered." *Id.*

Thus, if A.M. lacked school uniforms and maternity clothes because her family could not afford them and A.M. was being kept out of school because of the lack of proper clothes (issues on which, we note, no evidence was taken), those circumstances would still not constitute "neglect" that would warrant her removal from her home by DHS. Moreover, if A.M.'s family's inability to pay for these items was an issue, then the circuit court was required to consider the situation and both determine her parent's ability to pay for these services, Arkansas Code Annotated section 9–27–333(e)(1) (Repl.2009), and make that determination in a written order that incorporates the evidence supporting it. Ark. Code Ann. § 9–27–333(e)(2).

In short, the trial court's findings were clearly erroneous, and we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

PITTMAN, ROBBINS, GRUBER, GLOVER, and BROWN, JJ., agree.