SLIP OPINION



Cite as 2014 Ark. App. 193

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-13-988

| | |
|---|---|
| | **Opinion Delivered** March 19, 2014 |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES<br><br>APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. JV-2013-411-6] |
| V. | HONORABLE EARNEST E. BROWN, JR., JUDGE |
| KIMBERLY WHITE<br><br>APPELLEE | REVERSED |

**BRANDON J. HARRISON, Judge**

The Arkansas Department of Human Services (DHS) appeals a circuit court order that directed DHS to provide assistance to the White family in the form of purchasing furniture for their home. On appeal, DHS argues that there was insufficient evidence to support the circuit court's findings and that the circuit court failed to make written findings as required by statute. We agree with DHS and reverse.

On 1 July 2013, Kimberly White filed a family-in-need-of-services (FINS) petition in the Jefferson County Circuit Court. The petition did not state why it was filed or request specific relief, but attached to the petition was a report from Southeast Arkansas Behavioral Healthcare showing that White's fourteen-year-old son, D.W., had been diagnosed with Oppositional Defiant Disorder and Attention-Deficit/Hyperactivity Disorder. The court entered an order adjudicating the family in need of services that same day, and the Juvenile

Office of Jefferson County filed a notice of intent with DHS indicating that DHS's services were necessary because "the family does not have a kitchen table with chairs, beds, and a couch that is stable enough to hold them up." The Juvenile Office recommended that DHS provide services "to improve the quality of living as the juvenile does not have appropriate living arrangements."

Upon receiving the notice of intent, Family Service Worker Brandy Kidd visited the Whites' home. Kidd's report from this visit indicates that White lives in a three-bedroom, one-bath home with all working utilities. In the kitchen, Kidd saw a stove, refrigerator, microwave, and a fold-out table with no chairs. Kidd also noticed that the living room contained two chairs in fair condition. White's room contained a bed and dressers, and D.W.'s room contained a bed and mattress sitting on milk crates and no dresser; the third bedroom contained a sleeper sofa.

Kidd determined that White has a total monthly income of $1416 and that White's bills total $947 per month, leaving her with a disposable income of $469 per month.[1] After learning that the necessary furniture was available locally for less than $350, Kidd opined that "[t]he agency feels that Mrs. White receives an adequate amount of income to provide for the needs of her child." Kidd filed this report with the court on 9 July 2013.

At the review hearing, held 22 July 2013, the court expressed its displeasure with

---

[1]According to Kidd's report, White receives $718 in monthly social security and disability benefits for herself and $698 in monthly social security benefits for D.W., which totals $1416 in monthly benefits. However, Kidd's report also indicates that White receives $16 per month in SNAP (Supplemental Nutrition Assistance Program) benefits, making her total monthly income $1432.

Kidd's assessment and asked her why "whenever you do the assessments for the Five-Day Notice, you don't ever think anybody needs any assistance from DHS." The court found that the items listed in the report "are necessary to prevent removal" and ordered DHS to provide the items by close of business on July 26. Counsel for DHS objected and argued that purchasing these items would not prevent D.W. from being removed from the home, to which the court responded, "I understand." The court then stated that if the order was not complied with by July 26, then it would hold both DHS and Kidd in contempt. The court also asked Kismich Youngblood, a DHS supervisor, if she thought the Whites' home was suitable, and Youngblood stated that providing the furniture was not a service that would prevent removal. She explained that "[i]f [D.W.] went with those items or if he went without them, that won't prevent us from coming to get him. . . . That's not child endangerment."

The written order, entered on July 22, clarified that DHS "shall provide the family with a kitchen table, a bed (including mattress and frame), and a couch by close of business on Friday, July 26, 2013." The next day, DHS filed a motion to intervene for the limited purpose of contesting the FINS order and a motion to set aside. DHS argued that, pursuant to the juvenile code, the court may order family services to rehabilitate D.W. and prevent him from being removed from a parent or guardian, but purchasing a kitchen table, a bed, and a couch would not prevent D.W.'s removal in this case because the conditions in the home did not warrant his removal. DHS also asserted that the court's order did not meet statutory requirements because it: (1) failed to make written findings on how the purchase of these

3

items would prevent the removal of the juvenile; and (2) failed to make a determination of the parent's ability to pay for these services.

To avoid being held in contempt, DHS purchased the listed items and had them delivered to White's home on July 26. The court later denied DHS's motion without further findings on July 30, and DHS appealed.[2]

In cases that traditionally sound in equity, like this juvenile case, the appellate standard of review is de novo, although we do not reverse unless the circuit court's findings are clearly erroneous. *Ark. Dep't of Human Servs. v. C.M.*, 100 Ark. App. 414, 269 S.W.3d 387 (2007); *Moiser v. Ark. Dep't of Human Servs.*, 95 Ark. App. 32, 233 S.W.3d 172 (2006). A finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made after it has considered all the evidence. *Brewer v. Ark. Dep't of Human Servs.*, 71 Ark. App. 364, 43 S.W.3d 196 (2001).

In a family-in-need-of-services case, the petitioner must prove by a preponderance of the evidence that services are warranted. Ark. Code Ann. § 9-27-325(h)(2)(B) (Supp. 2011). Under the FINS statutes, if a family is found to need services, a circuit court can order family services to rehabilitate the juvenile and his or her family. Ark. Code Ann. § 9-27-332(a)(1)(A) (Repl. 2009). Statutory law also provides that, "[t]o prevent removal when the department is the provider for family services, the court shall make written findings outlining

---

[2]Although DHS was not a party below, it has standing to appeal this order because it followed the procedure for appeal set out in *Arkansas Department of Human Services v. R.P.*, 333 Ark. 516, 970 S.W.2d 225 (1998). *See also Ark. Dep't of Human Servs. v. A.M.*, 2012 Ark. App. 240, at 1, fn 1.

how each service is intended to prevent removal." Ark. Code Ann. § 9-27-332(a)(1)(B)(ii). Removal may only occur if there are "clear, reasonable grounds to conclude that the juvenile is in immediate danger and that removal is necessary to prevent serious harm from his or her surroundings or from illness or injury." Ark. Code Ann. § 9-27-313(a)(1)(C) (Supp. 2011). Finally, in all cases in which family services are ordered, the court shall determine a parent's ability to pay, in whole or in part, for these services, and that determination and the evidence supporting it must be stated in a written order. Ark. Code Ann. § 9-27-333(e)(1) & (2) (Supp. 2011).

Here, DHS first asserts that there was no evidence presented to show that D.W. was at risk of being removed or that the proposed services were designed to prevent removal. In fact, the only evidence presented at the hearing was testimony from Kidd and Youngblood; and they said that D.W. was not at risk of removal because there was no child-endangerment issue. DHS also notes the hole in the proof regarding White's inability to pay for some or all of the recommended services. Thus, DHS concludes, there was insufficient evidence to support the court's finding that the services were necessary to prevent D.W.'s removal.

DHS acknowledges that it has already complied with the circuit court's order but argues that we should not find the issue moot, as this is an issue that is capable of repetition yet evading review. The argument here is that the circuit court acted very similar in a prior case that this court reversed. *See Ark. Dep't of Human Servs. v. A.M.*, 2012 Ark. App. 240, ___ S.W.3d ___. The *A.M.* case and this case, says DHS, show that the same situation could arise in future cases. We agree that an exception to the mootness doctrine applies. *See A.L.*

SLIP OPINION

*v. State*, 2009 Ark. App. 368 (explaining that an exception to the mootness doctrine applies when an issue is capable of repetition, yet evades review).

We also agree that the circuit court clearly erred in finding that these services were necessary to prevent D.W.'s removal. No evidence was presented to support that finding. Nor did the circuit court provide the required written findings.

Reversed.

HIXSON and BROWN, JJ., agree.


*Tabitha McNulty*, Department of Human Services, for appellant.

No response.