

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-14-148

|  |  |
|---|---|
| | **Opinion Delivered** June 4, 2014 |
| JEFF FREEMAN<br>APPELLANT | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT [NO. JV-2013-159] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILD<br>APPELLEES | HONORABLE BARBARA HALSEY, JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

**KENNETH S. HIXSON, Judge**

Appellant Jeff Freeman appeals the November 2013 order of the Craighead County Circuit Court terminating his parental rights to his one-year-old son TF, born in November 2012. Freeman's attorney has filed a no-merit appeal based on *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004) and Ark. Sup. Ct. R. 6-9 (2013), asserting that there is no issue of arguable merit to an appeal of this termination order. The attorney also filed a motion seeking permission to be relieved as counsel.

Appellant's attorney filed a brief that includes a discussion of the sufficiency of the evidence to support termination of appellant's parental rights as well as a discussion of adverse rulings and why there could be no meritorious argument raised on appeal. The clerk of our court provided notice by mail to Freeman of his attorney's motion and brief at his last known

address in Jonesboro, informing him of his opportunity to file pro se points for reversal for our consideration. This attempted notification was returned as "undeliverable" by the postal service. Freeman did not file any such points for our consideration. Neither the Department of Human Services nor the child's attorney ad litem filed a brief with our court. After carefully examining the record and the no-merit brief, we hold that appellant's counsel has complied with the requirements for no-merit parental-rights-termination appeals and that the appeal is wholly without merit. *Green v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 684, __ S.W.3d __. Accordingly, we affirm the termination order and grant counsel's motion to be relieved. *Id*.

Appellant and the child's biological mother, Amber Hellums, were not married.[1] Appellant resided with Hellums in Jonesboro until mid-December 2012, shortly after their son's premature birth at thirty-three weeks. Medical testing at TF's birth showed that he was exposed to marijuana during gestation, and he was admitted to the neonatal intensive-care unit at UAMS due to respiratory distress. TF was not taken into custody at birth. Instead, a protective-services case was opened by DHS.[2]

A physical altercation between the two parents in December 2012 necessitated that appellant acquire his own residence, which he did in January 2013, although he remained in Jonesboro. The mother, who had legal custody of TF, left the baby with appellant beginning

---

[1] According to appellant, he was still married to another woman, who was the mother of three of his older children.

[2] The mother's parental rights were also terminated as to TF, but she does not appeal.

SLIP OPINION

in February 2013. DHS maintained contact and determined that appellant and the mother had not ensured that TF was receiving immunizations or having appropriate follow-up medical care.

DHS took emergency custody of TF in April 2013, and TF was adjudicated dependent-neglected in May 2013. The parents were ordered to cooperate with DHS, remain drug free, provide proof of any currently prescribed medications, maintain stable and appropriate housing for their son, maintain stable employment to support their son, submit to a drug-and-alcohol assessment if a parent tested positive for drugs, attend parenting classes, and watch "The Clock is Ticking" video, among other things. Appellant was specifically ordered to resolve all his criminal issues and to submit to a drug-and-alcohol assessment and follow recommendations.

As a consequence of many positive drug screens, appellant was ordered to submit to a hair-follicle test and a drug-and-alcohol assessment, which he did not do. Appellant's visits with his son were halted in June 2013 after he continued to test positive for illegal drugs, and he did not take the steps to address those drug problems in order to have his visitation reinstated. Notably, at one visit, appellant fell asleep and was seen slumped over the child.

A September 2013 report to the court informed the trial judge that appellant did attend some parenting classes and watched "The Clock is Ticking" video, as well as visit with his son in the beginning, but appellant did not remain drug free. This remained the overriding problem throughout this case. He tested positive for benzodiazepines, for which he failed to provide legitimate prescriptions, and he repeatedly tested positive for cocaine,

methamphetamine, and marijuana. Appellant's residence was admittedly unsuitable for a small child because it was in a state of disrepair. There were construction materials and power tools on the floor; there was construction material strewn about the exterior of the residence; there were dirty dishes in the sink, debris scattered through the home, and ashtrays full of cigarettes.

Neither parent appeared at an October 2013 review hearing. Appellant later claimed that he did not know about this hearing, although his address had not changed. In the order that followed that hearing, appellant was noted to have failed to remain drug free, failed to maintain a safe home, failed to maintain stable employment, failed to submit to assessments scheduled for him or to take advantage of referrals for inpatient treatment, and had been arrested during the pendency of the case.

DHS filed a petition to terminate appellant's parental rights to TF in October 2013, alleging two grounds, abandonment pursuant to Arkansas Code Annotated section 9–27–341(b)(3)(B)(iv), and "other factors or issues" pursuant to Arkansas Code Annotated section 9–27–341(b)(3)(B)(vii)*(a)*. The petition asserted specifically that appellant had not maintained contact with DHS, had not visited with TF, had not attended drug–and–alcohol assessments or a hair-follicle testing, had not resolved all criminal matters, and had not remained drug free.

At the termination hearing conducted in November 2013, testimony from DHS family service worker Amanda Thompson established that TF was doing very well in his foster-home placement, the foster family was "very interested in adoption" and had given a letter of intent to adopt TF, he was on target developmentally for his age, and he was "a very adoptable child." She said that follow up medical appointments and tests were being handled by the

foster parents. Thompson verified that appellant had been incarcerated at times during the case, and he was noncompliant with drug-and-alcohol and hair-follicle assessment appointments after consistently testing positive for drugs over the course of this case. She listed the drug tests as positive for methamphetamine, the active metabolite of marijuana, cocaine, and benzodiazepines. She stated that appellant expressed interest in inpatient rehabilitation, but he never followed through with DHS's referrals until the day prior to the termination hearing. She added that appellant's residence remained hazardous and not suitable for a child.

Appellant testified that he was not in disagreement with Thompson's testimony, with one exception. He said he provided proof of a prescription for "benzos" to a prior case worker. Appellant, a man in his mid-thirties, agreed that he had struggled with drug issues over the years. He claimed to have entered a six-week inpatient drug-treatment program the day prior to the termination hearing, offering a letter from that treatment center into evidence. Appellant said he worked as a contract laborer for a construction company and that his work schedule varied week to week, but he felt capable of paying off his criminal fines.

He explained that he experienced a problem with cocaine and that he used methamphetamine around the time he and TF's mother were in a confrontation in December 2012. Appellant was arrested for being a felon in possession of a firearm and was accused of battery against the mother. He agreed he had "been in jail a few times" during 2013, but he could not remember how many times. He thought it was "five or less." Appellant

admittedly used methamphetamine three days prior to the termination hearing, before he entered rehabilitation.

Appellant agreed that the mother of his three older children had halted his visitation. Appellant claimed that if he had his children, he could kick his drug addiction. He also said that when he exited rehabilitation, he would find a new place to live that was better for himself and his children.

The attorney ad litem recommended termination of appellant's parental rights, noting that appellant had not visited his son since June 2013 due to persistent positive drug screens and his failure to address his drug problems. The attorney ad litem stated that appellant's inpatient treatment started only one day prior to this hearing and was too late to avoid termination. Appellant's attorney offered no closing argument.

The trial court ruled from the bench, terminating appellant's parental rights, and a subsequent formal order memorialized those findings. The trial court specifically found that DHS proved by clear and convincing evidence that it was in TF's best interest to terminate parental rights, taking into consideration the likelihood that TF would be adopted and the potential harm to his health and safety if returned to appellant, and further that DHS had proved both the grounds it asserted against appellant. This appeal followed.

We review termination of parental rights cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. *M.T. v. Ark. Dep't of Human Servs.*, 58

Ark. App. 302, 952 S.W.2d 177 (1997). Clear and convincing evidence is that degree of proof that will produce in the fact finder a firm conviction as to the allegation sought to be established. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992). The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). Credibility determinations are left to the fact finder, here the trial court. *Moiser v. Ark. Dep't of Human Servs.*, 95 Ark. App. 32, 233 S.W.3d 172 (2006).

The purpose of the Juvenile Code is to provide permanency and stability in a child's life when it is not possible to return the child to the parent in a reasonable period of time, as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his child. *Cole v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 203, 394 S.W.3d 318; *Tucker v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 430, 389 S.W.3d 1. A parent's continuing drug use is evidence of potential harm to a child, and when the drug use goes unremedied by the parent, it can support termination of parental rights. *Long v. Ark. Dep't of Human Servs.*, 369 Ark. 74, 250 S.W.3d 560 (2007); *Allen v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 288, 384 S.W.3d 7. A parent's past behavior is often a good indicator of future behavior. *Stephens v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 249, __ S.W.3d __. When presented as a no-merit appeal, our court must examine the findings to support the termination and any adverse rulings to determine whether an appeal would be wholly frivolous.

Appellant's attorney has provided our court with a compliant no-merit termination-of-parental-rights brief, and the attorney sufficiently explains why an appeal would be wholly without merit. Our examination of the record and brief satisfies us that an appeal of this termination case would be wholly without merit.

Affirmed; motion to withdraw granted.

PITTMAN and WOOD, JJ., agree.

*Suzanne Ritter Lumpkin*, Arkansas Public Defender Commission, for appellant.

No response.