2012 Ark. App. 309

**Sandy THOMAS, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES, Paul Thomas, Edward Sportlee Bryant, and Minor Children, Appellees.**

**No. CA 11–1180.**

Court of Appeals of Arkansas.

May 2, 2012.

Leah Lanford, Arkansas Public Defender Commission, Little Rock, for Appellant.

Tabitha Baertels McNulty, Little Rock, for Appellee.

RITA W. GRUBER, Judge.

Sandy Thomas appeals the Miller County Circuit Court's order awarding permanent custody of her children, S.B., R.B., and K.T., to their respective fathers. Thomas contends that the court erred by misstating the evidence and considering facts not in the appellate record. She also argues that the evidence does not support the court's decision. We find no error and affirm the circuit court's order.

## I.

This case began on March 2, 2010, when the Arkansas Department of Human Services (DHS) removed T.T.,[1] then sixteen; K.T., then fourteen; and S.B. and R.B., two-year-old twins, from Thomas's custody due to allegations that Thomas was inadequately supervising the children because of her "substance misuse" and "mental capabilities." Thomas submitted to a drug test when the children were taken, which was positive for methamphetamine. DHS sought and obtained an emergency custody order on March 8, 2010. The court entered a probable cause order on March 10, 2010, placing T.T. and K.T. in the custody of their father, Paul Thomas, and continuing DHS custody of S.B. and R.B. while a home study was conducted on the home of their father, Edward Sportlee Bryant, in Texas.[2]

The court entered an adjudication order on April 19, 2010, finding that the children were dependent-neglected and that the allegations in the petition for emergency custody were true and correct. The court found that return of the twins to Thomas's custody was contrary to their welfare and that it was in the twins' best interest to remain in DHS custody. The court continued the custody of T.T. and K.T. in their father. The court stated that the goal was reunification with a concurrent plan of relative placement. The court ordered Thomas to obtain a psychological evaluation, attend counseling if recommended, sign all medical releases, undergo a drug-and-alcohol assessment, successfully complete parenting classes, and submit to random drug screens. It also ordered the children's respective fathers to submit to a hair-strand test and to successfully complete parenting classes. Thomas did not appeal from this order.

On June 14, 2010, the court placed S.B. and R.B. in the temporary custody of their father, Edward Sportlee Bryant. A caseworker report regarding the twins for July 2010 indicated that the children were clean, dressed appropriately, and comfortable in their environment. The caseworker also observed that both children appeared to speak more clearly and were easier to understand than she had observed in the previous months. The caseworker reported that she had supervised Thomas's visitation with the twins on July 29, 2010, at the Texas mentor agency in Sulphur Springs, Texas, and that Thomas and her adult daughter both smelled of intense cigarette smoke at the visit. She

---

1. T.T. reached her majority during the pendency of this case and is no longer subject to the court's jurisdiction.

2. It appears from testimony at the hearing that, in January 2010, Mr. Bryant moved out of the home he, Thomas, and the children were living in and took the children with him to live with his parents in Texas.

also reported that S.B. called a worker "Mama" in the office where the visitation occurred. Following the visitation, Thomas called the office to investigate the worker that S.B. called "Mama," suggesting that the worker knew the children outside of the office and intimating that she had a "relationship" with Mr. Bryant. The worker denied knowing the children and reminded Thomas that the office provided foster-care services and it was not unusual for children to call a female figure "mama." Thomas then expressed her displeasure in the size of the visitation room. The Texas agency allowed two more visits because they had been prepaid, but did not allow Thomas to conduct her visits at the agency thereafter due to her behavior.

A caseworker report dated August 10, 2010, stated that the relationship between Mr. Thomas and K.T. appeared to be strong. The report also stated that Mr. Thomas had completed parenting classes, that both K.T. and Mr. Thomas said their communication had improved and that the home was stable and recommended that K.T. remain there.

A review order on September 8, 2010, ordered the children to remain in their fathers' custody. The court found that Thomas had not completed intensive outpatient drug treatment and ordered her to complete this. In a review order dated December 10, 2010, the court left the children in their fathers' custody. The court also found that Thomas had again not complied with the case plan, because she had not completed outpatient drug treatment. The court ordered her to successfully complete outpatient drug treatment, successfully complete counseling, submit to random drug screens, and cooperate with DHS.

On April 11, 2011, the court held a permanency-planning hearing, and it entered orders on August 31, 2011, awarding permanent custody of R.B. and S.B. to their father, Edward Sportlee Bryant, and awarding permanent custody of K.T. to his father, Paul Thomas. The court granted visitation to Thomas pursuant to the standard visitation schedule. The court found that return of the children to Thomas's custody was contrary to their health, safety, and welfare and that continuation of custody with their respective fathers was in their best interest and necessary for their protection. The court also found that Thomas had failed to comply with the case plan by failing to complete outpatient drug treatment. The court relieved DHS from providing further services and closed the case.

In equity matters, such as juvenile proceedings, the standard of review on appeal is de novo, although we do not reverse unless the circuit court's findings are clearly erroneous. *Moiser v. Ark. Dep't of Human Servs.*, 95 Ark.App. 32, 34–35, 233 S.W.3d 172, 174 (2006). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Stewart v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 577, at 5, 2011 WL 4477858. We give due deference to the superior position of the circuit court to view and judge the credibility of the witnesses. *Chastain v. Chastain*, 2012 Ark.App. 73, at 7, 388 S.W.3d 495. This deference is even greater in cases involving child custody, as a heavier burden is placed on the judge to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Id.*

## II.

On appeal, Thomas contends that the court erred by misstating the evidence and considering facts not in the appellate record. She also argues that the evidence does not support the court's decision.

This case was before the court from the initial probable cause hearing, through the adjudication hearing and numerous review hearings, and concluded with the permanency planning hearing. We reject appellant's argument that the court could not consider the parties' behavior and the evidence gathered in those hearings in making its decision to award permanent custody. The hearings in a dependency neglect case build on one another, and the findings of previous hearings are elements of subsequent hearings. *Osborne v. Ark. Dep't of Human Servs.*, 98 Ark.App. 129, 137, 252 S.W.3d 138, 144 (2007).

Moreover, Thomas's main concern involves the court's consideration of the initial affidavit filed with the petition for emergency custody that contained the following allegations: "substance misuse and the mother's mental capabilities," Thomas's positive drug test for methamphetamine on the date the children were removed, and Thomas's hysterical behavior. She contends that a negative hair-follicle drug screen that she provided to the court three weeks later negated this affidavit. While we note that this test was neither ordered nor authorized by the court, supervised by DHS, or administered by anyone connected with this case, we hold that the truth of the initial dependency-neglect finding of the court is not before us. The court entered an order dated April 19, 2010, finding that the children were dependent-neglected and that the allegations in the petition for emergency custody were true and correct. Although this was a final, appealable order, Thomas did not appeal from it. She cannot now challenge the findings on which the order was based. *Lewis v. Ark. Dep't of Human Servs.*, 364 Ark. 243, 217 S.W.3d 788 (2005). In any case, the circuit court stated in its letter to counsel setting forth the reasons for its decision to award permanent custody of the children to their fathers that it had decided to disregard the findings in the initial drug test and the hair-follicle test submitted by Thomas because of the contradictory results.

■ This is a dependency-neglect case, which arose because the children were removed from Thomas's home by DHS. Thus, the court's permanency placement plan was governed solely by the Juvenile Code. *See* Ark.Code Ann. §§ 9–27–334 to –338 (Repl.2009 & Supp.2011). Under the Juvenile Code, the court is authorized to transfer custody to the non-offending parent if the court finds that it is in the best interest of the children. *Id.*

In this case, Thomas's testimony revealed that neither of her teenage children, K.T. and T.T., attended school regularly in her care, and that she regularly signed excuses for their excessive absences. In fact, K.T. failed the eighth grade and missed so many school days that the school district had filed a FINS truancy petition before this dependency-neglect case began. Evidence also revealed that K.T. and his father have a strong bond and that, in his father's custody, K.T. was attending school and doing well.

All of the testimony, including Thomas's, indicated that the twins, R.B. and S.B., were doing extremely well in their father's care, had improved in speech and behavior, and were well cared for. Jennifer Frazier, who was the twins' case manager for the Texas Department of Family Protective Services, had been working with Mr. Bryant and the twins for a year at the time of the hearing. She testified that Mr. Bryant and the twins lived with Mr. Bryant's father and stepmother in a very nice, clean, appropriate home in Wills Point, Texas. She said that the twins were developmentally challenged when they came to live with Mr. Bryant and that he had been proactive in getting the children's needs met. She said that she had visited the home at least once a month and

observed them at school and in their daycare. She testified that they were discharged from their preschool program for children with developmental needs because they had "surpassed that." She also testified that Mr. Bryant had obtained much-needed dental work for the twins, had seen to their other medical needs, and that both had begun wearing glasses. She said that the children had progressed "extraordinarily well" in Mr. Bryant's care and opined that the placement was "a success story."

Suzanne Pipkin, a licensed professional counselor and psychological examiner, testified that she had seen Thomas as a patient for eight sessions from July through September 2010. She said that she diagnosed Thomas as having a histrionic personality disorder. She explained this meant that a person had a tendency to be overly dramatic, overreact to situations, or exaggerate things. Ms. Pipkin testified that Thomas initially admitted to drug and alcohol use but not to addiction. Thomas also told Ms. Pipkin that she had suffered from anxiety and depression frequently throughout her life. Ms. Pipkin did not think that Thomas had made any progress in counseling because she continued to feel like a victim of DHS and the court system and failed to follow up on suggestions to deal with her anxiety and depression. Ms. Pipkin testified that she discontinued counseling with Thomas because Thomas chronically missed appointments. While Ms. Pipkin admitted that she had never seen Thomas parent her children, she opined that Thomas's personality type gave her some concern about Thomas's emotional stability and its potential effect on a child's development.

In its order, the court noted that it had considered the testimony, exhibits, statements of the parties and counsel, and the record in making its decision. Thomas disputes some of the statements made by the court in a letter to counsel, written a month before the court entered its order. The letter was not the court's order, nor was it incorporated into the court's order by reference. As with oral pronouncements from the bench, however, it does provide some explanation for the court's decision. One issue in the letter that Thomas disputes is the court's statement that Thomas's disruptive behavior at the probable cause hearing was indicative of someone who was under the influence of drugs or suffered from some type of mental illness or condition. While she disputes the truth of this and other statements regarding her behavior, the evidence did demonstrate that she was banned from using a Texas mentor agency for visitations due to her behavior. She also disputes the court's conclusion that she had a drug problem and explains that, because she had no drug problem, she failed to comply with the court's order to complete outpatient drug treatment. These issues involve the court's duty to judge the witnesses' credibility. We give due deference to the circuit court in these matters. *Chastain v. Chastain*, 2012 Ark.App. 73, at 7, 388 S.W.3d 495. This deference is even greater in cases like this one that involve child custody, as a heavier burden is placed on the judge to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Id.* After reviewing the evidence in this case, we hold that the circuit court's finding that it was in the best interest of the children to be placed in the permanent custody of their fathers is not clearly erroneous. Accordingly, we affirm its orders.

Affirmed.

HART and GLOVER, JJ., agree.