SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-13-385

| | |
|---|---|
| | **Opinion Delivered** September 18, 2013 |
| MONICA CONTRERAS<br>APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT,<br>[NO. JV-12-190] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES, CHRISTINE WILLIAMS, AND MINOR CHILD<br>APPELLEES | HONORABLE STACEY ZIMMERMAN, JUDGE<br><br>AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellant appeals the circuit court's grant of permanent custody of her son J.G., born February 15, 2002, to his maternal grandmother, Christine Williams.  On appeal, she argues (1) that there was insufficient evidence that granting permanent custody to Christine Williams was in the best interests of the child and (2) that the trial court erred in granting permanent custody to Christine Williams and closing the case. We affirm.

The Department of Human Services (DHS) exercised a seventy-two hour hold on J.G. on February 22, 2012, after appellant failed to pick up J.G. from school and was unable to be contacted. DHS filed a petition for emergency custody and dependency-neglect on February 27, 2012, pursuant to Ark. Code Ann. § 9-27-303, and an order granting emergency custody was filed on that same date. On March 1, 2012, a probable cause order was filed finding it

SLIP OPINION

necessary for J.G. to remain with DHS until the adjudication hearing.[1] Following its March 28, 2012 adjudication hearing, the court entered an adjudication and disposition order on March 29, 2012, in which it adjudicated J.G. dependent-neglected due to neglect and parental unfitness by appellant and temporarily placed J.G. with Christine. In that order, in addition to the case plan, the court required appellant to (1) cooperate with DHS; (2) keep DHS informed of where she was living; (3) participate in individual counseling; (4) refrain from use of illegal drugs and alcohol; (5) submit to weekly, random drug testing; (6) obtain and maintain stable housing; (7) demonstrate an ability to protect J.G. and keep him from harm; and (8) maintain contact with her attorney.

Initially, appellant was not compliant with her case plan. She failed to (1) call DHS weekly; (2) cooperate with DHS; (3) follow through on counseling; and (4) submit to weekly, random drug screens. On April 13, 2012, she failed to appear at a show cause hearing which resulted in issuance of a bench warrant for her arrest on the same date. After being picked up on the arrest warrant on April 24, 2012, and appearing before the court on April 25, 2012, the court sentenced appellant to thirty days in jail; however, appellant was released by an order filed May 1, 2012, so that she could travel to Dallas, Texas, to appear before the county criminal court there.[2]

By her August 30, 2012 review hearing, appellant had begun making progress in her case. A review order was entered on September 5, 2012, in which the court noted that

---

[1]A probable cause hearing was held on February 29, 2012.

[2]Appellant pled guilty to two unrelated charges and was sentenced to a period of time in jail.

appellant (1) completed her psychological evaluation; (2) failed to complete her drug and alcohol assessment; (3) had five non-random drug screens; (4) completed parenting classes; (5) had been incarcerated in Texas; (6) had not resolved her probation stemming from her Texas charges; (7) would be moving into an apartment on August 31, 2012; and (8) was in a custody case in Texas involving J.G.'s younger brother who lived with his paternal grandmother. Visitation between J.G. and appellant was prohibited until the attorneys obtained a visitation recommendation from J.G.'s counselor and the court issued an order detailing how contact would be made. Appellant was required to pay thirty dollars per week in child support.[3] The court also required DHS to do an Interstate Compact on the Placement of Children home study of appellant's Texas home and noted that appellant passed her drug test taken that day. The goal of the case was reunification.

The court filed an agreed order for supervised visitation on November 14, 2012, awarding supervised visitation to appellant once per month, on two consecutive days for at least one hour.[4] A second agreed order for supervised visitation was filed on December 20, 2012, awarding supervised visitation to appellant for at least two hours.[5]

On January 28, 2013, Christine Williams, through counsel, moved to intervene in the matter and petitioned for permanent custody of J.G., arguing that appellant was an unfit parent who continually manifested indifference to J.G.'s safety, stability, and well-being. She

---

[3]Child support payments were to begin on October 5, 2012.

[4]Visitation was to begin on November 13 and 14, 2012, and was to be supervised by DHS or J.G.'s custodian.

[5]There was no mention of consecutive days as previously agreed to. Visitation was to begin on December 21, 2012.

SLIP OPINION

alleged that appellant (1) abandoned J.G. at school in February 2012, (2) continually abused and neglected J.G. throughout his lifetime, (3) had a criminal history, (4) had enrolled J.G. in nine different schools in two states in the past three years, and (5) recently lost custody of J.G.'s half brother in Texas.[6]

In DHS's January 17, 2013 court report, DHS stated that appellant had been compliant with her case and acknowledged that appellant had (1) obtained a residence in Arlington, Texas, (2) been employed since June 2012, (3) completed counseling, (4) been cooperative with the department and contacted her caseworker regularly, (5) completed parenting classes in Texas in July 2012, and (6) completed her psychological evaluation on June 20, 2012. Following a January 18, 2013 permanency planning hearing, while finding appellant in compliance with the case plan and court orders, the court entered a February 15, 2012 order granting permanent custody of J.G. to Ms. Williams and closing the case.

This timely appeal followed.

---

[6]In support of her allegations that appellant has a criminal background, Ms. Williams submitted a copy of a sheet detailing a February 7, 2006 DWI charge in Washington County, a copy of a Madison County Court Docket for a March 5, 2006 DWI charge, and a printout from the Dallas County Criminal Background Search Service showing two undated charges attributed to appellant for DWI and public lewdness. In support of her allegation that J.G. had attended nine different schools in three years, Ms. Williams submitted a copy of a sheet listing the schools she alleged he attended and when. In support of her allegation that appellant lost custody, Ms. Williams submitted an Order from Tarrant County, Texas, signed October 9, 2012, showing that the court awarded joint custody to appellant and the father of J.G.'s half brother and awarded physical custody to the father with supervised visitation to appellant; no child support was awarded.

SLIP OPINION

The burden of proof in dependency-neglect proceedings, including reviews and permanency-planning hearings, is preponderance of the evidence.[7] In equity matters, such as juvenile proceedings, the standard of review on appeal is de novo, although we do not reverse unless the circuit court's findings are clearly erroneous.[8] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.[9] We give due deference to the superior position of the circuit court to view and judge the credibility of the witnesses.[10] This deference is even greater in cases involving child custody, as a heavier burden is placed on the judge to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interest of the children.[11] Moreover, on de novo review the appellate court will only reverse on grounds properly argued by the appellant.[12]

---

[7]*Anderson v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 522, at 4, 385 S.W.3d 367, 369–70 (citing Ark. Code Ann. § 9-27-325(h)(2)(B) (Repl.2009)).

[8]*Thomas v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 309, at 4, ___ S.W.3d ___, ___ (citing *Moiser v. Ark. Dep't of Human Servs.*, 95 Ark. App. 32, 34–35, 233 S.W.3d 172, 174 (2006)).

[9]*Ark. Dep't of Human Servs. v. Mitchell*, 2012 Ark. App. 240, at 4-5, ___ S.W.3d ___, – (citing *Brewer v. Ark. Dep't of Human Servs.*, 71 Ark. App. 364, 43 S.W.3d 196 (2001)).

[10]*Thomas*, *supra* (citing *Chastain v. Chastain*, 2012 Ark. App. 73, at 7, ___ S.W.3d ___).

[11]*Id.*, 2012 Ark. App. at 4-5 (citing *Chastain*, *supra*).

[12]*Anderson*, 2011 Ark. App. at 4, 385 S.W.3d at 369-70 (citing *Country Gentleman, Inc. v. Harkey*, 263 Ark. 580, 569 S.W.2d 649 (1978)).

Appellant's first argument on appeal is that there was insufficient evidence that granting permanent custody to Christine Williams, maternal grandmother to J.G., was in the best interests of the child. In support of this argument, appellant argues that Ark. Code Ann. § 9-27-338©) requires that a juvenile be returned to a parent before custody of the minor may be given to another person. It is well settled that only the specific objections and requests made at trial will be considered on appeal.[13] Arguments not raised below, even constitutional ones, are waived on appeal.[14] Because this argument was not made below, it is not preserved for appeal.

Even if appellant had made this argument below, she would not have prevailed. Her interpretation of said statutory provision is incorrect. Arkansas Code Annotated § 9-27-338©) permits the court, based on the facts of the case, to place the minor with a fit parent, return the juvenile to the guardian or custodian from whom the juvenile was initially removed at the permanency planning hearing, or authorize a plan to place custody of the juvenile with a parent, guardian, or custodian under certain conditions.[15] This list is in order of preference, but it does not require that a child be placed in that order.[16] The court was not required to grant custody to appellant—whether on a trial basis, temporary or permanent basis—before granting permanent custody to Ms. Williams.

---

[13] *Lucas v. Jones*, 2012 Ark. 365, at 9, ___ S.W.3d ___, ___ (citing *Johnson v. State*, 303 Ark. 12, 792 S.W.2d 863 (1990); *Shaw v. State*, 299 Ark. 474, 773 S.W.2d 827 (1989)).

[14] *Id.* (citing *Tracy v. Dennie*, 2012 Ark. 281, ___ S.W.3d ___).

[15] Ark. Code Ann. § 9-27-338(c)(1)-(3) (Repl. 2009).

[16] Ark. Code Ann. § 9-27-338©).

SLIP OPINION

In further support of her insufficiency argument, appellant also argues that neither the caseworker nor the judge provided evidence that appellant was an unfit parent or could not obtain return of J.G. immediately or within three months. The substantive law on this topic prefers a parent over a grandparent or other third person, unless the parent is proved to be incompetent or unfit.[17] While there is a preference in custody cases to award a child to its biological parent, that preference is not absolute.[18] Rather, of prime concern, and the controlling factor, is the best interest of the child.[19] The rights of parents are not proprietary and are subject to their related duty to care for and protect the child; the law secures their preferential rights only as long as they discharge their obligations.[20] The court found appellant to be unfit in its March 29, 2012 adjudication and disposition order. Appellant did not appeal this order, nor did she make this fitness argument at the permanency planning hearing, so this fitness argument is waived.

With regard to her argument that no evidence was provided showing that appellant could not obtain return of J.G. immediately or within three months, "[t]he burden is on the parent, guardian, or custodian to demonstrate genuine, sustainable investment in completing the requirements of the case plan and following the orders of the court in order to authorize

---

[17]*Camp v. McNair*, 93 Ark. App. 190, 198, 217 S.W.3d 155, 159 (2005) (citing *Dunham v. Doyle*, 84 Ark. App. 36, 129 S.W.3d 304 (2003); *Schuh v. Roberson*, 302 Ark. 305, 788 S.W.2d 740 (1990); *Stamps v. Rawlins*, 297 Ark. 370, 761 S.W.2d 933 (1988); *Jones v. Strauser*, 266 Ark. 441, 585 S.W.2d 931 (1979); *Payne v. Jones*, 242 Ark. 686, 415 S.W.2d 57 (1967); *Riley v. Vest*, 235 Ark. 192, 357 S.W.2d 497 (1962).

[18]*Id.* (citing *Dunham*, *supra).*

[19]*Id.*

[20]*Id.*

a plan to return home as the permanency goal."[21] It was appellant's duty to provide such evidence. She cannot remain silent on an issue for which she has the burden and then argue that DHS failed to do her job. Furthermore, appellant did not make this argument below. It is well settled that the failure to raise a challenge or obtain a ruling below is fatal to the appellate court's consideration of an issue on appeal.[22]

During its ruling at the permanency planning hearing, the court cited J.G.'s preference to remain with Ms. Williams and his continued trust issues with appellant as its reasons for granting permanent custody to Ms. Williams. The judge stated, "I can't return you to your mom today because I think just putting you there after you've had these worries that I think are well-founded—and I think it's supported by the record about your mom not being stable for you." It went on to state, "she hasn't made enough progress with your trust and me placing you with her to place you in her custody." Furthermore, contrary to appellant's assertion that J.G.'s reasons for wanting to stay with Ms. Williams were all materialistic, the record shows, in J. G.'s letter to the court, that he wished to remain in the custody of Ms. Williams for a number of non-materialistic reasons. Those reasons included making good grades in gifted and talented classes at school while handling the responsibilities he has with

---

[21]Ark. Code Ann. § 9-27-338(c)(2)(A)(iii).

[22]*Anderson*, 2011 Ark. App. at 8, 385 S.W.3d at 371 (citing *Bryant v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 390, 383 S.W.3d 901).

regard to his horse and dogs, feeling safe, having security, and that he loves his grandparents.[23]

We cannot say that the court's ruling was clearly erroneous.

Affirmed.

HARRISON and WYNNE, JJ., agree.

*Janet Lawrence*, for appellant.

*Tabitha B. McNulty*, County Legal Operations, for appellant.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.

---

[23]In his letter to the court, J.G. wrote that he brushes, feeds, waters, washes and trains his horse. He also wrote: "I have the ability to get up in the morning and not have to worry about were [*sic*] I am going to go several times [*sic*] to not worry about  is she (my mom) gonna leave me somewere [*sic*]."