

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-14-1130

| | | |
|---|---|---|
| ANGELA METCALF | | **Opinion Delivered** June 17, 2015 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, TENTH DIVISION [NO. JN2014-237] |
| V. | | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILD | | HONORABLE JOYCE WILLIAMS WARREN, JUDGE |
| | APPELLEES | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Appellant Angela Metcalf appeals from a decision of the Pulaski County Circuit Court awarding custody of Metcalf's daughter, A.P., to A.P.'s father, Jonathan Phillips, and closing the dependency-neglect case. She argues that the evidence was insufficient to support the court's order granting permanent custody to Phillips. We find no error and affirm.

### I. *Standard of Review*

In juvenile proceedings, the standard of review on appeal is de novo, although we do not reverse unless the circuit court's findings are clearly erroneous. *Thomas v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 309, 419 S.W.3d 734. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Stewart v. Ark. Dep't*

SLIP OPINION

*of Human Servs.*, 2011 Ark. App. 577. We give due deference to the superior position of the circuit court to view and judge the credibility of the witnesses. *Thomas*, *supra*. This deference is even greater in cases involving child custody, as a heavier burden is placed on the judge to utilize to the fullest extent of his or her powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Id.* With these standards in mind, we now turn to the evidence before the court and consider Metcalf's arguments challenging the sufficiency of this evidence.

## II. *The Evidence*

The case began when the Arkansas Department of Human Services (DHS) filed a petition for ex parte emergency custody and dependency-neglect following Metcalf's arrest on drug charges. At the time of her arrest, Metcalf and A.P. were passengers in a vehicle that was being driven by a registered sex offender; methamphetamine and drug paraphernalia were also found in the car. When a DHS caseworker made contact with Metcalf at the Sherwood Police Department, Metcalf tested positive for methamphetamine. She was charged with endangering the welfare of a minor, possession of methamphetamine with purpose to deliver, and possession of drug paraphernalia. Because A.P. was left without a legal caretaker following Metcalf's arrest, DHS took custody of A.P. on the basis of neglect and parental unfitness. Based upon this evidence, the court found probable cause and later adjudicated A.P. dependent-neglected, specifically finding that she was at substantial risk of serious harm as a result of neglect and parental unfitness. Despite this finding, the court set

the goal of the case to be reunification and set the case for subsequent evidentiary review hearings.

At the review hearings, the court received evidence pertaining to Jonathan Phillips, who had submitted to DNA testing. Based upon the results, the court determined Phillips to be the biological father of A.P.[1] Following that determination, the court placed A.P. in Phillips's temporary legal custody based upon a recommendation from DHS that Phillips was able to provide "stability and structure" for A.P.[2] Additional evidence showed that A.P. had started cheerleading practice and that Phillips had obtained a tutor for A.P. so she could improve her math grades.

In addition to the evidence concerning Phillips's stability, the court received evidence concerning Metcalf's instability with respect to her housing, employment, criminal charges, visitations, compliance with the case plan, and her ability to meet the needs of A.P.

In the area of housing, DHS noted that Metcalf had moved five times, had six different addresses, and had not notified DHS in a timely manner when she did move. Metcalf admitted that she had lived at several different addresses during the short pendency of the case. She described how she left her husband's home because he was abusive; she moved to the Ward Women's Shelter and then to Our House, where there was a "good program" and access to a bus route. After leaving Our House, she moved to Jacksonville.

---

[1]Phillips introduced a judgment of paternity acknowledging that he was A.P.'s biological father at a review hearing in September 2014.

[2]Caseworker Bethany Taylor testified that Phillips had always had stable housing and employment and that he and A.P. interacted very well together.

After her husband was incarcerated, she moved her trailer to Prothro Junction, but it was broken into there and she did not feel safe, so she moved to her current location in Benton. Metcalf explained that she had moved so many times because she was trying to find a better environment for herself and her daughter.

With respect to her employment, Metcalf admitted that she was unable to find a job while she lived in Jacksonville because she did not have access to transportation. By the date of the final hearing, however, Metcalf said that she had been working at Harps Grocery for about four weeks. She stated that she had been terminated from her previous job at a hotel over allegations that she was "confrontational" and had "fraternized with a client," although she claimed this was not true. Metcalf said that she could provide stability for A.P. because she was "pretty set" at her job and did not plan on moving again.

With regard to her criminal charges, Metcalf acknowledged that they were still pending, but she noted that she had entered a not-guilty plea and that she was scheduled for trial in December.

DHS expressed concerns regarding the area of visitation. DHS explained that Metcalf had missed six of her thirty-six visitations after the review hearing in April: of those, one was because Metcalf was sick; and two were because A.P. was out of town, and Metcalf could not reschedule the visits because she was working. DHS further reported "numerous conversations" with Metcalf about her visits. The Department was concerned with "the appropriateness of the conversation that she's been having with A.P. Ms. Metcalf does speak to A.P. about adult things, not age-appropriate topics." Caseworker Bethany Taylor noted

that Metcalf had been compliant, but not consistent, with her visitations. Metcalf said that she had missed some of her visits with A.P., but she was working one of those days, was sick another, and miscommunicated with her DHS caseworker on another. She asserted that the supervised visitations with Phillips's parents had not gone well because his parents were rude to her and "made comments that were against" her.

With regard to Metcalf's compliance with the case plan, DHS reported that communication with Metcalf was "very poor," in that she did not always answer her phone when DHS called, and when she did speak to the Department, "we have known to catch her in a lot of untruths." Although Metcalf had provided ten clean drug screens since the case began, DHS described Metcalf's compliance with the case plan as having "more than partially complied, but not substantially complied with the court orders." In addition to her instability in housing and employment, DHS reported non-compliance with court-ordered therapy. Metcalf admitted that she missed her court-ordered therapy for three weeks because she was looking for a job in White Hall to be closer to A.P., but she asserted that she notified her caseworker and therapist of her plans beforehand.

Finally, with regards to Metcalf's ability to meet A.P.'s needs, the court heard evidence concerning Metcalf's lack of transportation and her inability to provide for A.P. educationally. Metcalf conceded that A.P. had been in three different schools while in her care and that she did not have a functioning car at various times throughout the development of the case. Moreover, she agreed that her lifestyle had not been stable over the preceding six months, due to her frequent moves and lack of employment.

The court also considered testimony concerning A.P. By all reports, A.P. was doing very well in her placement with Phillips, who had "provided stability and structure."A.P. testified that she would like to live with her dad, saying she felt it was a better place for her to live "because my mom and me have been through some things and I think it'd just be better if I lived with my dad." She cited having lived in an abusive home with her mother, which was "scary." She said that it was a hard decision for her to come to, but she wanted to live with her father and visit with her mother. A.P. explained that she wasn't getting good grades when she lived with her mother and felt that she needed a tutor, but she did not ask her mother for help "because she was working all the time." She said that visits with her mother went well and that she liked them, but sometimes her mother and her paternal grandmother would "say things to each other that maybe they shouldn't."

Based upon this evidence, the circuit court entered its final order granting permanent custody to Phillips and closing the case. The court cited DHS's difficulty in getting in touch with Metcalf, her frequent moves over the preceding month, the fact that her lease on her trailer lot was month-to-month, and the fact that her job was part-time. The court concluded that Metcalf had "not been stable throughout the majority of this case" and had "made minimal progress towards alleviating or mitigating the causes of [A.P.'s] removal from the home." Phillips, on the other hand, had complied with the case plan and court orders, had been supportive of A.P. both emotionally and financially, had maintained the same stable housing and employment, and had an extended family support system and a good relationship with A.P. The court therefore granted permanent legal custody of A.P. to

SLIP OPINION

Phillips, established a visitation schedule for Metcalf, and closed the case. Metcalf filed a timely notice of appeal.

### III.  *Arguments*

Pursuant to Arkansas Code Annotated section 9–27–334(a)(2)(A) (Repl. 2009), if a juvenile is found to be dependent–neglected, the circuit court may enter an order transferring custody of the juvenile to a relative or other individual if to do so is in the best interest of the juvenile. *See Keckler v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 375, 383 S.W.3d 912. On appeal, Metcalf argues that the circuit court erred in finding that it was in A.P.'s best interest to be placed in her father's permanent custody.

Metcalf's challenge to the granting of permanent custody essentially hinges on two components: she challenges the timing of the court's decision, and she challenges the evidence to support the decision. While Metcalf concedes that the child was removed from her care due to parental unfitness, she takes the position that, from the onset of removal, the case was proceeding towards a goal of reunification between her and the child. She specifically argues that she was in compliance with the case plan and the court orders. Further, she argues that the court's decision to place permanent custody with Phillips at month seven of a twelve-month case plan is inconsistent with her compliance and the best interest of the child.

Metcalf contends that the evidence presented at the hearings demonstrated that she had made substantial progress with the case plan. She cites her recently stable housing situation and notes that her previous frequent moves were explained by, among other things,

attempting to improve her situation by seeking shelter at the Ward Women's Shelter and Our House and looking for housing with nearby employment opportunities. She further argues that the evidence showed that her "instability" was the result of her "making a diligent effort to extricate herself from the situation she was in when the case began and to work through the necessary steps to find stability in her housing and employment."

Metcalf complains that she was only given seven months to attempt to rectify the situation that caused removal, and yet within that time had "worked her way into a stable residence, a stable job, and even got her vehicle fixed by the time the case closed—all while completing parenting classes and being very consistent in attending therapy with the exception of the three weeks she was in White Hall." She also argues that it was "disingenuous" for DHS to blame her for missing six of her thirty-six visits, when the evidence showed that two were missed because A.P. was out of town and others were rescheduled at a time when she could not attend.

It is true that Phillips was awarded permanent custody seven months after A.P. was removed from Metcalf. The paramount concern in a custody determination, however, is the best interest of the child; all other considerations are secondary, *Bamburg v. Bamburg*, 2011 Ark. App. 546, at 12, 386 S.W.3d 31, 38, including strict adherence to a calendar. While it is also true that Metcalf had made some improvements during the course of the case, the circuit court had evidence before it that she had only recently obtained relatively stable housing, that she worked part-time making $7.50 per hour and had expenses of at least $450 per month, and still had pending drug charges that had yet to go to trial as of the time of the

8

final hearing. In addition, the court considered evidence that A.P. was flourishing in her new environment and had unequivocally expressed her desire to live with her father. On the record before us, we are therefore unable to say that the circuit court's decision was clearly erroneous. *See Fogerson v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 232.

As noted above, we give great deference to the circuit court in cases that involve child custody. *Thomas*, 2012 Ark. App. 309, at 8, 419 S.W.3d at 738. Having reviewed the evidence in this case, we hold that the circuit court's finding that it was in A.P.'s best interest to be placed in the permanent custody of her father was not clearly erroneous. Accordingly, we affirm its order.

Affirmed.

VAUGHT and HIXSON, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Tabitha B. McNulty*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.