Cite as 2025 Ark. App. 220

# ARKANSAS COURT OF APPEALS

DIVISION II

No. CV-24-799

| | |
|---|---|
| ASHLEY DEDRICK<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | **Opinion Delivered** April 9, 2025<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, EIGHTH DIVISION [NO. 60JV-24-177]<br><br>HONORABLE TJUANA BYRD MANNING, JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant Ashley Dedrick appeals from the order of the Pulaski County Circuit Court placing her daughter, minor child ("MC"), in the permanent custody of her father and closing the case as to MC. On appeal, Dedrick contends there was insufficient evidence to support finding that it is in MC's best interest to be placed in her father's permanent custody. We affirm.

In February 2024, the Arkansas Department of Human Services (DHS) removed Dedrick's five children from her care in a dependency-neglect action. Jonathan Williams was identified as MC's legal father.[1] The court found that Williams was a noncustodial parent from whom custody had not been removed. He was named as a party, obtained counsel, and was provided services by DHS. An attorney ad litem (AAL) was appointed to represent the best interest of MC. Following the August

---

[1]Dedrick and Williams were never married; however, Williams's paternity of MC had previously been established, and he was court ordered to pay child support.

review hearing, the circuit court awarded permanent custody of MC to Williams. Dedrick appeals the award of custody, arguing that (1) there was insufficient evidence presented for the court's consideration of best interest, and (2) Williams is an unfit parent. A joint response was filed by appellees DHS and minor child; Williams is not a party to this appeal.

In juvenile proceedings, our standard of review on appeal is de novo, although we do not reverse unless the circuit court's findings are clearly erroneous.[2] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.[3] We give due deference to the superior position of the circuit court to view and judge the credibility of the witnesses.[4] This deference is even greater in cases involving child custody since a heavier burden is placed on the judge to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interest of the children.[5] Further, this is a dependency-neglect case, which arose because MC and her siblings were removed from Dedrick's home by DHS. Thus, the court's permanency placement plan was governed solely by the Juvenile Code.[6] Under the Juvenile Code, the court is authorized to transfer custody to the nonoffending parent if the court finds that it is in the best interest of the child.[7]

---

[2]*Moiser v. Ark. Dep't of Hum. Servs.*, 95 Ark. App. 32, 233 S.W.3d 172 (2006).

[3]*Thomas v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 309, 419 S.W.3d 734.

[4]*Id.*

[5]*Id.*

[6]*See* Ark. Code Ann. § 9-27-334 to -338 (Supp. 2023).
[7]*Id.*

Here, at the review hearing, pertinent to this appeal, the circuit court heard testimony from family service worker (FSW) Andrea Williams; Dedrick; and Dedrick's mother, Cristy Perry, who was serving as the provisional relative placement for MC and her siblings.[8]

FSW Williams testified that Dedrick completed a psychological evaluation; however, court-ordered individual counseling, parenting classes, and a hair-follicle test had not yet been completed. She stated that sometimes Dedrick's visits with the children go well, while other times they do not. At some points, visits were "a bit sporadic." FSW Williams testified that there had been other concerns during visits. She described an incident when Dedrick brought a grill to use in the DHS office parking lot. Once informed that grilling in the parking lot was prohibited, Dedrick refused to put the grill fire out. Local police and the fire department were called to assist; ultimately, Dedrick vacated the premises, and the visit ended. FSW Williams further testified that there had been issues when DHS assisted Dedrick with transportation. Dedrick was rude to the drivers, placing her feet on the dash of the vehicle, wasting food in the vehicle, and smoking cigarettes in the vehicle. FSW Williams requested that, due to Dedrick's disrespectful behavior and refusal to comply with the rules of the vehicle, DHS be relieved from providing transportation for Dedrick.

FSW Williams testified that MC's father, Williams, has complied with the case plan and court orders. She stated that he completed the court-ordered hair-follicle test. The results were positive for cocaine and THC; consequently, Williams was referred for a drug assessment. The assessment determined that he did not meet the criteria for further substance-abuse treatment, and he was not

---

[8]Kevin Cook also testified at the review hearing. He is the legal father of one of MC's siblings. His testimony has no bearing on the case at hand.

3

recommended to complete any outpatient or inpatient drug treatment. Williams stated during the assessment that he was not sure how his hair-follicle test came back positive for cocaine. FSW Williams stated that Williams did not have other services to complete. Family time with MC had been going well, visitations were appropriate, and there had been no concerns. She elaborated that there were no safety concerns that would prevent placement of MC in Williams's custody. FSW Williams recommended that MC be placed with Williams, the case be closed as to MC, and Williams be dismissed from the case.

Additionally, FSW Williams stated that MC and her siblings could not be returned to Dedrick's custody. She still needed to complete court-ordered services and display some benefit from the services; there were concerns with Dedrick's mental health and her capacity to safely and appropriately parent.

FSW Williams stated that if MC is placed with Williams, DHS, through a protective-services case, will assist him with getting therapy set up at MC's new school. She explained that Williams was not involved in the cause of MC's removal from Dedrick; he made significant, measurable progress; and he has been "consistent in his reliability" in the case. FSW Williams expressed no concerns with Williams's ability to promote MC's best interest.

FSW Williams acknowledged that Dedrick's home, which she visited the day before the hearing, was clean and appropriate, there was adequate space for MC and her siblings, the juveniles all have their own beds, the home had working lights and water, and there was some food. However, DHS still had parenting concerns and wanted Dedrick's visits with the juveniles to remain supervised due to Dedrick's mental health and instability; there were concerns with the juveniles getting their health and safety needs met in Dedrick's care. FSW Williams stated that Dedrick views DHS as her

4

babysitter. The day before the hearing, Dedrick refused a drug screen but stated that she was going to take a hair-follicle test. FSW Williams stated that Dedrick has an issue with following rules and that she had not seen any evidence of progress in Dedrick's mental-health stability, other than obtaining medication. She noted there has been no improvement in Dedrick's ability to communicate or deal with authority since getting her medication.

Dedrick testified that she has had altercations and issues with DHS during her visits. She stated that she has an issue with MC living with Williams because of "drug use." Dedrick stated that she took a hair-follicle test the day before the hearing and had not yet received the results. Dedrick testified that she resolved "the whole environmental neglect thing." She stated that she engages in age-appropriate activities with the juveniles. She stated that she needs transportation assistance only when taking a particular medication because it makes her drowsy; she takes the medication on an as-needed basis.

Cristy Perry is the foster parent and the maternal grandmother of MC and her siblings. The juveniles were placed with her in a provisional relative home. Perry testified that the juveniles had been in her home for approximately six months and had previously been placed with her for three months in a prior DHS matter. She stated that Dedrick kept the juveniles from her for almost three years after she got them back the previous time. Perry stated that Dedrick is her daughter, and she has witnessed her struggle with mental-health issues since elementary school. She is concerned for the juveniles' safety if returned to Dedrick. Her specific concerns included the juveniles being left at home alone, not having proper food, the house being very dirty, the absence of clean clothes, and general safety issues. Perry testified that she had not observed a significant improvement in Dedrick's mental health in the six months the juveniles have been in her care. She stated that Dedrick's mental

5

state is inconsistent; sometimes Dedrick curses her, other times she expresses that she loves her. She's very "up and down." Perry testified that she has no concerns with MC being placed with Williams.

In closing, DHS and the attorney ad litem stated that MC should be placed in Willams's permanent custody and further assured the court that there were no immediate health or safety concerns that would prevent placement of MC with Williams.

The circuit court found that it is contrary to MC's and her siblings' welfare to be returned to Dedrick's custody. The court found that Dedrick had partially complied with the case plan and court orders. There was no evidence that she addressed her mental-health issues, and although she had been referred for multiple services, the only one she timely completed was the psychological evaluation, which listed several follow-up recommendations that had not yet been addressed. The court further noted that Dedrick has problems with discerning what is and what is not appropriate and exhibits some issues with authority.

In its oral ruling, the circuit court found that Williams had

complied with the court orders. He has had successful weekend visits, and although the court is also concerned about the positive hair drug screen, the court will approve the recommendation or request for [MC] to be placed in [Williams's] legal custody today, and for the court involved case closed, as to [MC] and Mr. Williams be excused from the case. I am ordering DHS to open a protective services case to monitor Mr. Williams to ensure that the referral for therapy for [MC] to have in-school therapy, or whatever therapy is best for her, but that it gets done and the therapy is started. I don't want the [protective services] case closed until she is actually receiving therapy. And in the meantime, I'm also ordering, based on the recommendation in the CASA report that the Department, to the extent that they need, to assist Mr. Williams with ensuring that [MC] has an IEP evaluation, or some sort of assessment for any educational services that she may need. And I'm ordering the Department to drug screen him biweekly during this [protective services] process. And I'm also ordering that [MC] have visitation with her siblings every other weekend at Ms. Perry's home, while they continue to live there.

Dedrick argues on appeal that it is not in MC's best interest to be placed in Williams's permanent custody because he is not a fit parent. In support of her assertion, she points to Williams's hair-follicle test result that was positive for cocaine and THC. She additionally contends there was insufficient evidence "in front of the court" to make the determination that placement with Williams is in MC's best interest.

Here, as detailed above, the circuit court heard evidence that Williams complied with the case plan and orders of the court. He completed the hair-follicle test as ordered. Moreover, he completed the drug-and-alcohol assessment as ordered. The assessment determined that he did not demonstrate a need for substance-use treatment; it noted that while he adamantly denied cocaine use, Williams's use of THC was primarily for managing back pain, a specific health issue, rather than for recreational or social purposes. The assessment also noted that Williams had a stable employment history and holds a valid CDL license. Despite Dedrick's contention to the contrary, the circuit court did not discount the significance of Williams's hair-follicle test results. The record establishes that the opposite is true. In its ruling, the circuit court took precautions to ensure that any potential drug issue of Williams is monitored by ordering biweekly drug screens. Further, the court ordered a protective-services case to be opened to monitor Williams and to ensure that MC receives therapy. Also, DHS and Perry expressed no concerns about MC's placement in Williams's permanent custody. The evidence is sufficient to support the circuit court's finding that it is in MC's best interest to be placed in Williams's custody. Dedrick's argument that the evidence is "scant" is nothing more than a request to reweigh the evidence more heavily in her favor, which we will not

7

do.[9]  We give special deference to the circuit court's superior position to evaluate the witnesses, their testimony, and the child's best interest.[10]

Dedrick also argues that once the court closed the case as to MC, it lost jurisdiction to ensure Williams's compliance with the orders of the protective-services case.  She argues that once placed in Williams's permanent custody and the case closed, MC is no longer dependent-neglected under the Juvenile Code, and there is no method to ensure that Williams follows through with the biweekly drug screens or further therapy services for MC.  This argument is not one Dedrick may assert.  Her lack-of-jurisdiction argument seeks to assert the rights of Williams or DHS.  Dedrick lacks standing to assert the violation of another party's rights.[11]

Affirmed.

KLAPPENBACH, C.J., and THYER, J., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.

[9]*Brown v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 354, 552 S.W.3d 457.

[10]*Cordell v. Hylle*, 2022 Ark. App. 209.

[11]*Isbell v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 110, 573 S.W.3d 19.