Cite as 2026 Ark. App. 224

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-25-236

| | |
|---|---|
| TERRY FOSTER<br><br>APPELLANT<br><br>V.<br><br>STEPHANIE SUTTON AND SUTTON LTD., LLC<br><br>APPELLEES | Opinion Delivered April 8, 2026<br><br>APPEAL FROM THE RANDOLPH COUNTY CIRCUIT COURT [NO. 61CV-24-26]<br><br>HONORABLE ADAM G. WEEKS, JUDGE<br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

Terry Foster brings this appeal from an order of the Randolph County Circuit Court finding that he failed to prove the existence of a contract for the purchase of real property but awarding him $18,300 on a theory of unjust enrichment. On appeal, Foster argues that the circuit court's decision denied him his due-process and equal-protection rights. In addition, he raises claims of fraud and argues that the circuit court's finding that no contract existed was clearly against the preponderance of the evidence.

The parties to this case are appellant Terry Foster ("Terry") and appellees Stephanie Sutton ("Stephanie") and Sutton LTD., LLC ("the LLC"). When the LLC was formed in 2017, the only two members were Stephanie and her husband, Keith Sutton ("Keith"). According to the LLC's operating agreement, any action to sell any company property required the unanimous consent of all members.

In November 2018, the LLC purchased the parcel of property at issue in this case from Charlotte and Ralph Baltz for $80,000. Keith used the property for an auto body shop. In January 2022, Terry contacted Keith about buying the property to use as his own shop, and Keith agreed to sell it to him for $80,000. Although Terry began making payments for the property, there was apparently never a written contract memorializing the sale. A "mortgage deed" reflected the sale price of $80,000, but this document was not signed by either Keith or Terry or executed by the LLC.

Keith passed away in December 2023. At that time, Stephanie knew that Terry had been working in the shop on the property, but she assumed he was renting it since she and Keith owned it. She was unaware of the purported mortgage deed until she was going through some documents after Keith died and found the deed and an amortization schedule in an envelope among his things. The amortization schedule showed that Terry had been making payments on the property from May 2022 through December 2023.

In February 2024, Stephanie and the LLC filed a complaint against Terry. They asserted that Keith and Terry had only an oral agreement to sell the property, and the alleged mortgage deed was neither executed by any named party to the instrument nor executed by the true owner of the property, the LLC. The complaint asked the circuit court to determine that the purported contract was ineffective. Alternatively, in the event the court found that a contract existed, the complaint alleged that Terry was in breach of the contract because he had failed to pay taxes and insurance on the property and had paid two months' rent payments with a check written on insufficient funds. If the court found no breach of

contract, the complaint asked the court to determine the amount of principal that remained due on the indebtedness.

The matter proceeded to trial in October 2024. Terry testified that he and Keith were half brothers. Terry first contacted Keith about purchasing the property in January 2022. He said that they had been talking about it for a couple of years, but the property had previously been rented by someone else. The agreed-upon purchase price was $80,000, which is the amount Keith had paid for it in 2018. Terry explained that the amortization schedule showed payments that he had made from May 2022 through December 2023. He claimed that those payments were in addition to $40,000 in cash that Terry delivered to Keith in March 2022.

Terry knew that Stephanie did not want him to have the property, acknowledging that she had sent him an email after Keith died expressly informing him of her disapproval. He denied there was ever any discussion about the LLC owning the property, saying "it was mixed up. Some of it had her name on it, some of it didn't." He said the deal was between him and Keith individually because Stephanie did not want to sell the property to him.

Regarding the mortgage deed, Terry said that he obtained the deed from Keith at the same time he got the amortization schedule. He conceded that he never signed the deed, which he got months after he started making payments. He also agreed that the deed provided that he would pay taxes and insurance on the property, but he never did. Terry said he and Keith "worked on" getting the mortgage deed signed but never got it done. Asked if part of the reason was because Stephanie was not going to agree to the sale, Terry replied, "It wasn't her building. It wasn't her––wasn't her deal." He initially claimed the title was solely

3

in Keith's name and that Stephanie "didn't have nothing more to do with it." But when asked if the title was in Keith's name and not Keith's and Stephanie's names, he replied, "I understand it was both ways. Sometime it was, sometime it wasn't." He added that he did not think she had to sign off on the contract because Keith "was the one I dealt with. He's the one that said it was his building." At the conclusion of his direct testimony, Terry agreed that he and Keith never got everything in writing because "she didn't want me to have it." Terry asked that the contract for the sale of the property be honored and that he take title to and possession of the property.

Stephanie also testified at trial, asserting that before her husband's death, she knew that Terry was renting the building that she and Keith owned, but she had no information or details about "the land deal." Stephanie said she didn't take care of any of the business and did not see the mortgage deed between Keith and Terry until after Keith died. She said that she neither individually nor as a member of the LLC ever agreed to the sale of the property. Stephanie testified that she would not have approved the sale of the property for $80,000 to Terry or to anyone else. She noted that other people had expressed an interest in buying the property and that she had an offer of $132,000 for it, with the contingency that Terry not be on the property. Stephanie agreed that, despite some bounced checks, Terry was current on payments according to the amortization schedule through October 2024, such that the remaining balance on the purported loan was $69,282; however, she had never found any receipts of any kind between Keith and Terry. On cross-examination, Stephanie acknowledged that Terry had been making payments to Keith; however, she said she had no

idea that Keith was trying to sell the property, and she thought the money being paid was rent.

After the trial, the circuit court issued a letter opinion on November 1, 2024, in which it found that no enforceable contract existed between the parties:

> The majority of the essential elements necessary for a contract are there. It is clear to me that Mr. Sutton and Mr. Foster intended to enter into a sale for the subject property. The amortization schedule found by Ms. Sutton following her husband's death evidenced an agreed upon monthly payment and interest rate. The evidence points to the $80,000 amount amortized was not a sale price but a remaining balance. The Mortgage Deed found in Mr. Sutton's working papers provides some evidence of intent. Unfortunately, the terms laid out therein do not reflect what was happening in real life.
>
> All of that being said: a contract requires an agreement by and between two or more parties, bound by consideration. We do not have that here. The subject property is owned by Sutton Ltd., LLC. The Operating Agreement entered into evidence states that this is a member managed corporation. What's more, there is a prohibition against selling the majority of the assets of the corporation without unanimous consent from its members. Furthermore, were Mr. Sutton to wish to sell his ownership interest in the LLC, Ms. Sutton would have had a right to purchase his interest first.
>
> It is clear from the evidence that Mr. Foster believes to this day that Ms. Sutton does not hold any ownership interest in the subject property. His testimony was such at trial. He clearly does not believe that his deal was with her. Nor did he believe that his deal was with Sutton Ltd., LLC. Thus it is clear that Sutton Ltd., LLC--the owner of the property--did not enter into an enforceable contract for the sale of the subject property.

The court also noted that "the fallout from this decision requires further argument" and directed the parties to file posttrial briefs "as to what the result of this decision should be." An order reflecting the court's findings was entered on November 14.

Terry submitted a brief in which he argued that Stephanie had been unjustly enriched by the payments he made to her for a property that he never received. Stephanie and the LLC responded that, among other things, Terry failed to satisfactorily prove a specific dollar amount by which they had been unjustly enriched.

The circuit court entered a judgment on January 22, 2025. In it, the court found that Foster had made cash payments of $40,000 to Keith on behalf of the LLC, thereby unjustly enriching Stephanie and the LLC. The court also found that a fair rental value on the property would have been $700 a month beginning in May 2022, and it offset $21,700 in fair rental from the $40,000 payments. The court therefore entered a judgment in Terry's favor for $18,300, which would be a lien on the property and would be satisfied at the closing of the sale of the property to a third party. Terry filed a timely pro se notice of appeal on January 29.

In appeals from bench trials, we will reverse only if the circuit court's findings are clearly erroneous. *Jones v. MNLRN, LLC*, 2025 Ark. App. 537, 725 S.W.3d 790; *Glenn v. Bubbus*, 2018 Ark. App. 252, 548 S.W.3d 857. Whether a binding contract exists is a question of law. *Smith v. Prudential Prop. & Cas. Ins. Co.*, 340 Ark. 335, 10 S.W.3d 846 (2000).

Terry's argument on appeal is somewhat difficult to follow.[1] His point heading states that he is arguing whether he was "denied due process and equal protection guaranteed by

---

[1] We also point out that Terry's statement of the case is woefully deficient. Arkansas Supreme Court Rule 4-2(a)(6) requires an appellant's brief to contain a statement of the case and facts that "shall identify and discuss all material factual and procedural information contained in the record on appeal. . . . All material information must be supported by

6

the 14th Amendment to the United States Constitution when the Randolph County Circuit Court held Appellant's cash payments of $78,000 toward purchase price of real property, consideration, as rent and ordered Appellant off the property; further, whether Appellee treated Appellant's contract as a Ponzi scheme." In addition to his due-process and equal-protection arguments, he also asserts both that the circuit court "ruled the contract unenforceable" and that it "found no contract exists because of lack of consideration." Finally, he urges that Keith and Stephanie Sutton committed fraud.[2]

Terry's due-process, equal-protection, and fraud arguments were neither presented to nor ruled on by the circuit court. We acknowledge that he did mention due process and equal protection in his notice of appeal, and he asserted that the Suttons had engaged in fraud or a Ponzi scheme in a response to the LLC's request for notice in the event that he sought an appeal bond. The circuit court, however, was never given an opportunity to rule on these issues and arguments. We therefore conclude that they are not preserved for appellate review. *See Chastain v. Chastain*, 2012 Ark. App. 73, 388 S.W.3d 495 (stating the well-settled rule that in order to preserve an argument for appeal, the issue must first be raised at the circuit court level).

---

citations to the pages of the appellate record where the information can be found." Terry's statement of the case does none of these things. We do not order rebriefing, however, because the appellees' brief supplies the missing information in an appropriate format.

[2]Terry's appeal does not challenge the specific dollar amount of the judgment awarded to him.

The sole argument preserved for appeal is that the circuit court erred in finding that no contract existed, although Terry mistakenly asserts that the court found that no contract existed for lack of consideration. In actuality, the circuit court found that there was no contract because the true owner of the property—the LLC—was not a party to the agreement.

We find no error in this decision. In a factually analogous case, this court affirmed a grant of summary judgment finding that no contract existed. *Stewart v. Copeland Holdings, LLC*, 2009 Ark. App. 145, involved a suit to recover earnest money in a real-estate-contract dispute. The real estate at issue was owned by Henley Properties, LLC; the sole members of the LLC were Rebecca and Waylan Henley. Appellee Copeland Holdings, LLC, paid $20,000 earnest money to purchase that real estate; the offer was accepted by the Henleys' personal attorney-in-fact. The terms of the contract were never performed, however, and Copeland sued for the return of its earnest money, arguing, among other things, that no contract had ever been formed. Copeland eventually moved for summary judgment, asserting that the Henleys, individually, had no ownership interest in the property. The circuit court granted Copeland's motion, reasoning that the Henleys' attorney-in-fact signed the contract on behalf of Rebecca and Waylan Henley individually and not as their agent or in the capacity of their LLC. This court affirmed, writing as follows:

> The trial court did not err in its application of the law based on a finding of fact that neither the owner of the property nor its agent signed the contract nor was ever identified as a party to the contract. The facts regarding whether a contract was formed are not in dispute. The sellers in the contract are listed as Tony Stewart, Waylan Henley and Rebecca Henley. However, the Henleys owned no interest in this

property because they had conveyed by way of warranty deed recorded April 18, 2006, their right, title, and interest to the land at issue. Eric Bray [the attorney-in-fact] signed the contract as attorney-in-fact for Waylan Henley and Rebecca Henley. Again, the Henleys had no ownership interest in the property.

An essential element of a contract is "competent parties." *See Youree v. Eshaghoff*, 99 Ark. App. 4, 256 S.W.3d 551 (2007). *Because the LLC was never a party to the contract, it cannot be argued that an enforceable contract was ever formed.* Accordingly, we hold that the trial court's decision granting summary judgment was not clearly erroneous.

*Stewart*, 2009 Ark. App. 145, at 2–3 (emphasis added).

Here, as in *Stewart*, the LLC was never a party to the contract. The circuit court thus did not err in determining that no valid contract was ever formed, and we therefore affirm.

Affirmed.

VIRDEN and GLADWIN, JJ., agree.

*Larry J. Steele, PLC*, by: *Larry J. Steele*, for appellant.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*; and *Broadaway Law Firm*, by: *Brad Broadaway*, for appellees.